UNITED STATES DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA DIVISION

**TIMOTEO GOMEZ MOSQUEDA,**
    **Plaintiff,**

VS.    CASE NO. _____

**RAFEAL GROUP, LLC**
**d/b/a SUNSET GRILL**
    **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW,** Plaintiff, Timoteo Gomez Mosqueda (hereinafter "Plaintiff"), by and through his undersigned counsel, hereby files this action against the above-named Defendant, Rafeal Group, LLC doing business as Sunset Grill (hereinafter "Defendant" or "Sunset Grill"), and alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff hereby brings this action against Defendant to recover unpaid wages, including overtime compensation, liquidated damages, and attorney's fees, pursuant to the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 207 (a)(1) and 29 U.S.C. § 215(a)(3), and the Florida Whistleblower Act, Fla. Stat. § 448.102(3). Pursuant to 29 U.S.C. § 216(b), Plaintiff is permitted to pursue legal action against Defendant.

**THE PARTIES**

*The Plaintiff*

2. Plaintiff Timoteo Gomez Mosqueda (hereinafter "Plaintiff") was employed by Rafeal Group, LLC d/b/a Sunset Grill from April 1, 2002, to January 25, 2025, as a line cook.

1

3. At all times material to this action, Plaintiff was a non-exempt employee pursuant to 29 USC § 213 and thus entitled to overtime wages for any and all hours worked.

4. At all times during his employment with Defendant, Plaintiff was a resident of Clearwater, Florida.

*The Defendant*

5. Defendant, Rafeal Group, LLC, is a Florida Limited Liability Company operating a restaurant, "Sunset Grill" in Pinellas County, Florida. Defendant is an employer as defined by 29 U.S.C. § 203(d) and 207(a)(1).

6. Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1).

7. Defendant owns and manages operations at Sunset Grill, where Plaintiff was employed for twenty-three (23) years.

## JURISDICTION AND VENUE

8. This is an action for damages by Plaintiff against his former employer for violations of the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 207 (a)(1) and 29 U.S.C. § 215(a)(3), and the Florida Whistleblower Act, Fla. Stat. § 448.102(3).

9. The Court has jurisdiction over FLSA claims pursuant to 28 U.S.C. §§ 1331, 1337.

10. The Court has supplemental jurisdiction over Plaintiff's claims under the Florida Whistleblower Act, Fla. Stat. § 448.102(3), pursuant to 28 U.S.C. § 1367.

11. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division, in accordance with 28 U.S.C. § 1391(b), 28 U.S.C. § 1391(b)(1) & 1391(c), and is proper, pursuant to Rule 1.04(a) of the Local Rules of the Middle District

of Florida, as all the events giving rise to these claims occurred in Pinellas County, Florida.

12. At all times relevant hereto, the Plaintiff has resided in Pinellas County, Florida, and was employed by the Defendant.

## FACTUAL BACKGROUND

13. Plaintiff began working for Defendant, Sunset Grill, on April 1, 2002, as a Line Cook.

14. During each year of his employment, Plaintiff was awarded a pay raise.

15. From 2020 to 2023, Plaintiff received yearly raises.

16. In or about January 2023, Plaintiff was advised that he would be receiving a raise to $23.00 per hour.

*Fraudulent Pay Activity from Sunset Grill to Timoteo Gomez Mosqueda*

17. At all times material to this action, Plaintiff was a non-exempt/hourly employee and thus entitled to overtime wages.

18. Plaintiff was regularly working well over forty-nine (49) hours each week, for a total of nine (9) or more hours of additional overtime, which were recorded in his time cards.

19. In or about 2023, Mr. Chris Limberakis (hereinafter "Mr. Limberakis") intentionally reduced Plaintiff's reported hourly rate to $14.00 per hour on their system despite Plaintiff's agreed and actual rate of $23.00 per hour, for the purpose of concealing and offsetting overtime wages owed for 50 or more hours of work each week.

20. Plaintiff was never informed of this rate of pay, and Plaintiff was unaware that he was

3

being underpaid for his total hours of work.

21. From January 4, 2023, through July 24, 2024, Mr. Limberakis manipulated payroll records to reflect only forty (40) hours of regular work time and 7.75 hours of overtime, regardless of the additional hours Plaintiff worked, as recorded on Plaintiff's pay stubs.

22. Throughout 2023 and 2024, the Plaintiff was unlawfully paid in cash for any additional hours exceeding 47.75 hours, without tax deductions or lawful reporting at the regular rate of $23.00 per hour, rather than the correct overtime rate.

23. The Company failed to keep any records of these cash payments to Plaintiff or report them.

24. Plaintiff's compensation was incorrect from or about January 4, 2023, to July 24, 2024, based on a system of being paid $14.00 an hour, then time and a half for 7.75 hours, and the rest in cash based on the rate of $23.00 an hour.

25. From or about January 2023 to July 2024, Plaintiff was undercompensated by $34,787.30 in unpaid overtime wages based on the additional hours worked each week, and the wrong rate of pay.

*Sunset Grill is Purchased by Rafeal Group, LLC, and Fraudulent Payments to Timoteo Gomez Continue.*

26. On or about July 26, 2024, Rafeal Masoud of Rafeal Group, LLC (hereinafter "Mr. Masoud") purchased Sunset Grill from Mr. Limberakis's company, Potatoes to Oranges, LLC.

27. From or about August 30, 2024, to January 2025, Mr. Masoud started reporting all of

4

Plaintiff's hours through payroll, in contrast to the previous reporting by Mr. Limberakis.

28. From or about July 24, 2024, to January 2025, Mr. Masoud continued to deliberately reduce Plaintiff's reported regular pay rate to $14.00 per hour, despite having knowledge that Plaintiff was under the belief that his actual rate was $23.00 per hour, in an attempt to conceal the true amount of wages owed for 50+ hours of work.

29. The defendant intentionally deceived our client by paying him a lower hourly rate and a lower overtime rate, and then providing cash to offset the amount due, thereby ensuring that the Plaintiff was paid $23.00 an hour without any overtime pay.

30. For example, on August 30, 2024, the Plaintiff worked a total of 64 hours. Plaintiff was paid as payroll gross $722.25 and $750.00 in cash. The total amount he received was $1,472.75, which, divided by 64 hours, totals a rate of pay of $23.00 per hour.

31. Similarly, in the chart below are a few examples where the Plaintiff can prove that the amounts added between payroll and cash payments always divide to $21-$23 per hour, without overtime, for the total hours logged.

| Pay Stub Date | Paid through Payroll | Total Hours Worked | Cash Pay | Total Pay | Fraudulent Hourly Rate of Pay (without overtime) |
|---|---|---|---|---|---|
| 10/11/2024 | $833.00 | 62 | $593.00 | $1426.00 | $23 |
| 10/18/2024 | $833.00 | 40 | $87.00 | $920.00 | $23 |
| 10/25/2024 | $833.00 | 63 | $616.00 | $1449.00 | $23 |
| 11/1/2024 | $833.00 | 63 | $616.00 | $1449.00 | $23 |
| 11/8/2024 | $833.00 | 60 | $547.00 | $1380.00 | $23 |
| 11/15/2024 | $833.00 | 63 | $616.00 | $1449.00 | $23 |
| 11/22/2024 | $833.00 | 64 | $639.00 | $1472.00 | $23 |
| 11/29/2024 | $833.00 | 66 | $685.00 | $1518.00 | $23 |
| 12/6/2024 | $775.25 | 52 | $420.00 | $1195.25 | $22.98557692 |

| | | | | | |
|---|---|---|---|---|---|
| 12/13/2024 | $833.00 | 63 | $616.00 | $1449.00 | $23 |
| 12/20/2024 | $833.00 | 60 | $547.00 | $1380.00 | $23 |
| 12/27/2024 | $833.00 | 60 | $547.00 | $1380.00 | $23 |

32. From or about August 30, 2024, to January 2025, Plaintiff was underpaid $5,696.23 for the reported hours worked.

33. From August 30, 2024, to January 2025, Plaintiff asserts that he was not paid overtime, but Defendant intentionally changed the hours reported to fewer hours, anywhere from an additional five (5) to ten (10) overtime hours.

*Defendant Intentionally Changed and lowered Plaintiff's Hours Worked to Withhold Payment of Overtime.*

34. In or about July 2024, near the time of the sale of Sunset Grill, Mr. Limberakis informed Mr. Masoud that Plaintiff was fully qualified to serve as manager, emphasizing that Plaintiff's prior experience as a line cook and his knowledge of the business rendered him capable of managing the operation successfully.

35. In or about August 2024, the Plaintiff learned that he was expected to assume additional responsibility at Sunset Grill.

36. In or about August 2024, Plaintiff approached Mr. Masoud to inquire about his compensation, as Plaintiff had assumed additional responsibilities and asserted that he felt he was deserving of increased pay in alignment with his expanded duties, given that he was working 60 or more hours per week.

37. From August 2024 to January 2025, Plaintiff regularly arrived at work early and remained late to complete inventory and to open the kitchen line.

38. Mr. Masoud frequently inquired why Plaintiff was working outside his scheduled hours, and Plaintiff explained that he was required to perform these tasks because Mr. Masoud had delegated them to him, but had taken away scheduled time for inventory.

39. Mr. Masoud continually relented by telling Plaintiff to *"do your thing,"* yet continued to complain each time Plaintiff performed this work—approximately three times per week—even though Plaintiff was still expected to complete the inventory by 8:00 a.m., when his line cook responsibilities began.

40. In or about October 2024, Plaintiff discovered that Sunset Grill was deliberately altering his time records in the payroll system by entering later start times than when he actually arrived to perform inventory and earlier end times than when he in fact remained to complete kitchen clean-up, thereby reducing his recorded hours worked.

*Defendant's Sunset Grill's Retaliatory Termination*

41. In or about the week of January 6, 2025, Mr. Masoud approached the Plaintiff, asking him to accept a flat-rate salary of $1,200.00 per pay period in exchange for working 60 hours per week.

42. Plaintiff informed Mr. Mousad that he would not do this because he was being asked to take a $3.00 per hour pay cut for more hours and additional responsibilities.

43. Mr. Mousad asked the Plaintiff to consider the salary pay proposition, but then, that same week, Mr. Mousad changed the Plaintiff's pay to a salary.

44. On or about January 2025, Plaintiff confronted Mr. Mousad about making the change without his consent, and Mr. Mousad blamed it on his accountant.

7

45. On or about January 2025, the day after Plaintiff had confronted him, Mr. Mousad summoned Plaintiff to his office. He inquired as to whether he had further considered Defendant's proposal to move him to a salaried pay structure.

46. Plaintiff told Mr. Mousad that he would consider going to a salary if his schedule was changed to five (5) days a week, with his regular pay being $1,200.00 per pay period.

47. Mr. Mousad laughed at Plaintiff and said Plaintiff's counter was not fair to him, as he expected him to work six (6) days a week.

48. Plaintiff told him he would only consider taking the proposed salary pay if he had two (2) days off a week.

49. The plaintiff inquired of Mr. Mousad whether he would be fired if he refused, to which Mr. Mousad replied no, but stated that the change to a salary pay with 60 hours a week was happening regardless.

50. As the Plaintiff was contemplating the offer, he printed his pay stubs, records, and timesheets. He immediately noticed an issue with his pay and time, discovering that he was not being paid correctly.

51. On or about January 20, 2025, Plaintiff raised concerns with Defendant regarding the underpayment of wages, the payment in cash, and the Defendant's failure to properly compensate him for overtime hours worked. Mr. Mossad was seemingly angry at Plaintiff.

52. On January 25, 2025, Plaintiff was cornered by the General Manager, who yelled at Plaintiff for not doing more work during prep time.

53. The General Manager got into the Plaintiff's face and yelled, saying that the Plaintiff made *"more money than I do"* and that if Plaintiff did not do the work, they would find someone else to do it.

54. Plaintiff attempted to contact Mr. Mousad multiple times to determine why this had happened and whether he had been fired, but Mr. Mousad never responded.

55. Plaintiff was then contacted by the company's third-party payroll company, which informed him that he would not receive any further payments from them, confirming his termination.

## CLAIMS FOR RELIEF
## COUNT I
## FAIR LABOR STANDARDS ACT - UNPAID OVERTIME
## 29 U.S.C. § 207 (a)(1)

56. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-55 above.

57. Pursuant to 29 U.S.C. § 207 (a)(1), "...no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

58. At all times material hereto, Defendant was an "employer" within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d).

59. At all times material hereto, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e)(1).

60. Defendant was and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

61. At all relevant times, Plaintiff was a non-exempt employee and eligible for overtime compensation for all hours in excess of forty (40) hours/week, as contained in Paragraphs 1 through 17.

62. During the relevant period, Plaintiff regularly worked more than forty (40) hours per week for Defendant, often working between fifty (50) and sixty-four (64) hours weekly, as contained in Paragraphs 18, 21-22, 24-25, 28, 30-32, 36-40, 47-51.

63. From January 4, 2023, through July 24, 2024, Defendant intentionally reduced Plaintiff's recorded hourly rate from $23.00 to $14.00 per hour and falsified payroll records to reflect only forty (40) hours of regular time and approximately 7.75 hours of overtime without advising Plaintiff of the change, as contained in Paragraphs 18 and 24-25.

64. Defendant further paid Plaintiff in cash for additional hours worked beyond the recorded amounts, at his hourly rate of $23.00 rather than the required overtime rate, without reporting or withholding taxes on those cash payments contained in Paragraphs 19-23.

65. Following the sale of Sunset Grill to Defendant Rafeal Group, LLC, Mr. Rafeal Masoud continued this unlawful pay from approximately August 2024 through January 2025 by recording Plaintiff's hourly rate as $14.00 per hour through payroll, concealing the true number of overtime hours worked, and paying Plaintiff a combination of reported wages and cash payments to give the appearance of a consistent hourly rate of approximately $23.00 per hour, without overtime compensation, as stated in Paragraphs 28-32.

66. Defendant deliberately altered Plaintiff's time records to show later start times and earlier clock-out times than when Plaintiff actually arrived and departed, thereby reducing the

total number of hours reported and depriving Plaintiff of overtime-earned wages, as contained in Paragraph 33.

## COUNT II
## FAIR LABOR STANDARDS - RETALIATORY TERMINATION
## 29 U.S.C. § 215(a)(3)

67. Plaintiff realleges and incorporates by reference in Paragraphs 1-55 above.

68. Under the FLSA U.S. Code 215(a)(3), "It shall be unlawful for any person…to discharge…any employee because such employee has filed any complaint…"

69. At all times material hereto, Defendant was an "employer" within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d).

70. At all times material hereto, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e)(1).

71. Plaintiff engaged in protected activity when, on or about January 20, 2025, he complained to Defendant's owner, Mr. Rafeal Masoud, regarding Defendant's unlawful pay practices, the falsification of time records, and Defendant's failure to pay him overtime wages in violation of the Fair Labor Standards Act as contained in Paragraphs 50 through 51.

72. Plaintiff's oral complaint allowed Defendant fair notice, with a degree of formality that he was invoking rights under the FLSA, as contained in Paragraph 51.

73. Defendant, through the General Manager, retaliated against Plaintiff after he raised these protected complaints by creating a hostile work environment by yelling at Plaintiff as contained in Paragraphs 52-53.

74. In the days following Plaintiff's complaint, Defendant's General Manager confronted and yelled at Plaintiff in front of other staff members, accusing Plaintiff of not performing

enough work during prep time, and threatening to replace him, as contained in Paragraphs 52-53.

75. Immediately thereafter, Plaintiff attempted multiple times to contact Mr. Masoud for clarification regarding his employment pay but received no response, as contained in Paragraph 54.

76. Plaintiff was subsequently informed by Defendant's payroll company that he would no longer receive payment from Defendant, confirming his termination on or about January 25, 2025, five days after complaining of his unpaid overtime wages as contained in Paragraph 55.

77. Defendant's termination of Plaintiff's employment was a direct and retaliatory response to Plaintiff's protected complaints regarding unpaid overtime and unlawful pay practices as contained in Paragraph 51.

**COUNT III**
**FLORIDA PRIVATE SECTOR WHISTLEBLOWER ACT FLA. STAT § 448.102(3)**

78. Plaintiff realleges and incorporates by reference in Paragraphs 1-55 above.

79. Under the Florida Whistleblower Act, Fla. Stat. § 448.102(3), "...an employer may not take any retaliatory personnel action against an employee because the employee has…objected to or refused to participate in any activity….or practice of the employer which is in violation of a law, rule, or regulation."

80. At all times material hereto, Defendant was an "employer" as defined under the Florida Whistleblower Act ("FWA"), Fla. Stat. § 448.101(3).

81. Plaintiff engaged in protected activity when, on or about January 20, 2025, he

complained to Defendant's owner, Mr. Rafeal Masoud, regarding Defendant's unlawful pay practices, the falsification of time records, and Defendant's failure to pay him overtime wages in violation of the Fair Labor Standards Act as contained in Paragraphs 50 through 51.

82. Plaintiff's oral complaint allowed Defendant fair notice, with a degree of formality that he was invoking rights under the FLSA, as contained in Paragraph 51.

83. Defendant, through Mr. Masoud and its General Manager, became hostile and confrontational toward Plaintiff immediately after his complaint, including yelling at Plaintiff, threatening to replace him, and attempting to pressure him into accepting a reduced salaried rate for increased hours of work as contained in Paragraphs 52-53.

84. Within days of Plaintiff's protected complaint, Defendant terminated his employment by ceasing communication with Plaintiff and notifying its payroll company to discontinue his pay, as contained in Paragraphs 54-55.

## **PRAYER FOR RELIEF**

**ACCORDINGLY,** Plaintiff Timoteo Gomez Mosqueda prays for the following damages or relief against Rafeal Group, LLC:

A. Award Plaintiff unpaid wages, including unpaid overtime compensation, in an amount to be determined at trial, as provided by 29 U.S.C. § 216(b);

B. Order Defendant to reinstate Plaintiff. 29 U.S.C. § 216(b).

C. Award Plaintiff the payment of wages lost and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

D. To declare that Defendant, Sunset Grill, has violated the wage payment and overtime provisions of the FLSA, 29 U.S.C. §207(a)(1);

E. To declare that Defendant, Sunset Grill, has violated the recordkeeping provision of the FLSA 29 U.S.C. § 211(c) as to Plaintiff;

F. To declare that Defendant, Sunset Grill, violations of the FLSA were willful;

G. Award Plaintiff attorney's fees and costs, as provided by 29 U.S.C. § 216(b) and Fla. Stat. § 448.08;

H. Order Defendant to cease and desist from violating the FLSA in the future; and

I. Grant such other and further equitable relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

**WHEREFORE**, Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED on October 21, 2025

/s/ Daniela Carrion
**Daniela Carrion, Esq.**
Fla. Bar No.: 125366
laborlaw@lineschfirm.com
LINESCH & CARRIÓN PA
700 Bee Pond Road
Palm Harbor, FL 34683
(727) 786-0000
(727) 786-0974 (FAX)
Attorney for Plaintiff
daniela.carrion@lineschfirm.com